IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

TERRANCE PRUDE,

                Plaintiff,

        v.

WILLIAM POLLARD, ANTHONY MELI,
TONIA MOON, JAMES MUENCHOW,
JEREMIAH LARSEN, CYNTHIA RADTKE
and CORY SABISH,

                Defendants.

OPINION and ORDER

13-cv-512-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

In this lawsuit brought under 42 U.S.C. § 1983, pro se prisoner Terrance Prude is alleging that various prison officials disciplined him for complaining about staff misconduct, in violation of the First Amendment. Defendants' position is that they disciplined plaintiff for lying about staff, which they say is not protected by the First Amendment. Both sides have filed motions for summary judgment. Dkt. ##13 and 36.

Having reviewed the materials related to both motions, I am denying them with respect to plaintiff's claims against defendants William Pollard, Jeremiah Larsen, Cynthia Radtke and Corey Sabish because there are genuine disputes of fact on the question whether those defendants were involved in disciplining plaintiff even though they knew that plaintiff had not lied. However, I am granting defendants' motion and denying plaintiff's motion

1

with respect to defendants Anthony Meli, Tonia Moon and James Muenchow because plaintiff has failed to adduce evidence that those defendants took any adverse actions against him for engaging in protected speech.


PRELIMINARY ISSUES REGARDING THE PROPOSED FINDINGS OF FACT

Before setting forth the facts, it is necessary to discuss two issues regarding the proposed findings of fact submitted by the parties.  First, plaintiff objects to all of the declarations defendants submitted on the ground that they were not signed.  However, because defendants are registered users of the court's electronic filing system, they are permitted to sign documents electronically, using the designation "s/," which is what defendants did in this case.  This procedure is authorized by this court's Local Rule 5 and the Electronic Filing Procedures, copies of which I have included with this order.  To the extent plaintiff is concerned that the rules concerning electronic filing are an example of special treatment, his concern is misplaced.  The requirements of Fed. R. Civ. P. 11 and potential penalties of perjury apply equally to documents that are signed electronically and in writing, so defendants do not obtain any advantage.  Electronic signatures simply are a tool of administrative convenience to make it easier to file documents electronically.

Second, the proposed findings of fact plaintiff submitted did not comply with the court's Procedure to be Followed on Motions for Summary Judgment, which plaintiff received with the preliminary pretrial conference order and again when defendants filed their motion for summary judgment.  Plaintiff's proposed findings of fact were not "factual

proposition[s] . . . followed by a reference to evidence supporting the proposed fact," as required by the <u>Procedure</u>.  Instead, plaintiff simply listed various pieces of evidence in the record with little or no explanation of the facts in the document that he wanted the court to consider.

A party may not cite generally to documents and expect the opposing side and the court to determine how the document might be relevant.  <u>Little v. Cox's Supermarkets</u>, 71 F.3d 637, 641 (7th Cir.1995) ("[A] district court is not required to scour the record looking for factual disputes [or] to scour the party's various submissions to piece together appropriate arguments.").  Rather, "[t]he statement of proposed findings of fact shall include ALL factual propositions the moving party considers necessary for judgment in the party's favor."  <u>Procedure</u>, I.B.3.

In this case, plaintiff's failure to propose specific factual propositions was not dispositive because plaintiff was more specific in his responses to defendants' proposed findings of fact.  However, in the future, plaintiff should take care to read the court's procedures to make sure that he is applying them correctly.

From the parties' proposed findings of fact and the record, I find that the following facts are undisputed.


UNDISPUTED FACTS

Plaintiff Terrance Prude is a prisoner at the Waupun Correctional Institution, where he has been since April 2011.

3

On or about September 10, 2012, Teresa Heidemann, a correctional officer, issued plaintiff a conduct report for participating in gang activity. On November 18, 2012, Heidemann was demoted from a lieutenant to a sergeant.

In a grievance received on December 4, 2012, plaintiff wrote the following:

On [November 29, 2012,] I was given information from prison guards that Heidemann was demoted from the gang coordinator position due to the finding that she didn't qualify for the position and lack[s] credibility on gang activity. I believe this new information negates the hearing officer's (H/O) finding of guilty in [the September 10] conduct report because H/O only found me guilty because he found "the reporting staff credible." The reporting staff (i.e. Heidemann) has now been demoted and credibility questioned by those who demoted her from the "gang coordinator" position. I believe this info is dire because the H/O did not have this type of info before rendering a disposition.

Defendant Tonia Moon, the grievance examiner, rejected plaintiff's complaint as untimely on the ground that it related to a conduct report that had been affirmed by defendant William Pollard, the warden, on November 2, 2012. In addition, she found that plaintiff had not shown good cause for filing a late complaint because his allegations were "based on hearsay and no proven factual documentation." The deputy warden affirmed that decision.

In a letter dated December 21, 2012, plaintiff asked defendant Pollard to "take a second look" at the September 10 conduct report because Heidemann "falsified [the] conduct report and lacked credibility," which plaintiff said the warden "already kn[e]w because [Heidemann] was demoted for such behavior according to [the warden's] own staff." (Plaintiff did not identify any of these staff members in his letter.) In addition, plaintiff said that he believed the warden was "attempting to cover up [Heidemann's] behavior by not

4

correcting the injustice."  Plaintiff repeated the allegation that Heidemann had falsified

conduct reports several times throughout the letter, but he did not provide details to support

his belief.

Plaintiff's letter was forwarded to defendant Jeremiah Larsen, a lieutenant, who

reviewed the letter and determined that Heidemann had not been demoted or disciplined

for falsifying conduct reports.   (Defendants do not say how Larsen made that

determination.)  Larsen issued a conduct report to plaintiff for lying about staff, in which

he wrote the following:

> On [February 15, 2013,] I, Lt. Larsen, was given an inmate
> correspondence route from the warden[']s office dated 12/28/2012.  The
> reason for the correspondence route was a letter authored by inmate Prude,
> Terrance #336878 being sent to Warden Pollard that contains false
> misleading information that affects her integrity.
>
> In the first paragraph inmate Prude states in part "your staff,
> Heidemann, falsified my conduct report and lacked credibility.  Your
> administration demoted Heidemann from 'gang coordinator' due to falsifying
> C/R's and lacking credibility.  I was found guilty only because, at the time, it
> was not known that Heidemann was falsifying C/R's and lacked credibility."
>
> Approximately half way into paragraph 2 inmate Prude against states
> in part "your officer, ie Heidemann was punished due to her behavior with
> regard to falsifying C/R's and lacking credibility but what about the inmates
> that were harmed by her actions?  I'm requesting that my CR #2322494 be
> thrown out due to Heidemann falsifying C/R's and lacking credibility, which
> you already know because she was demoted for such behavior according to
> your own staff."
>
> It should be noted that the staff member mentioned was not in fact
> administratively demoted as inmate Prude is stating.  Additionally, she did not
> receive any punishment due to her behavior and did not falsify any conduct
> reports.   Inmate Prude's statements clearly attack the staff member[']s
> integrity and if communicated to other inmates could affect her safety as a
> staff member.

5

Defendant Toni Meli, the security director, reviewed the conduct report and determined that the conduct report should proceed to a disciplinary hearing and that plaintiff's conduct qualified as a major offense.  On February 19, 2013, plaintiff received a copy of the conduct report.

Plaintiff requested the appearance of two staff witnesses at his disciplinary hearing, the warden and a captain named John O'Donovan.  On February 28, 2013, defendant Cynthia Radtke, a captain, denied both of plaintiff's witness requests.

On March 11, 2013, defendant Cory Sabish presided over plaintiff's disciplinary hearing.  Plaintiff submitted a written statement in which he said he had not lied but simply "wrote the Warden telling him what prison guards were saying (that I overheard)"  and that "DOC 303.271 allows me to complain through the ICRS system and appeal to the Warden."  After reviewing the letter plaintiff sent the warden, the conduct report and plaintiff's written statement, Sabish found plaintiff guilty of lying about staff.  In his decision, Sabish wrote:

> * Hearing committee reviewed all testimony and evidence and notes that the inmate [says that he is] not guilty.
>
> * Report writer viewed as credible due to the direct observation of the incident, without reason to fabricate the report and has no stake in the outcome of the hearing.
>
> * The committee notes no known conflict between the advocate and the inmate.
>
> * Inmate's statement found to be self-serving as he attempts to justify why he wrote the lies.
>
> *  The committee feels the event, more likely than not, unfolded as recorded and ergo, finds the inmate guilty of 303.271 as he wrote the Warden about talking about a staff member being demoted and misconduct which was not

true as it is supported in the statement written in the conduct report.

On March 13, 2013, plaintiff submitted a grievance in which he alleged that he had been disciplined to retaliate against him for complaining about staff misconduct. Defendant Moon rejected the complaint under Wis. Admin. Code § DOC 310.08(3) on the ground that it raised issues related to a conduct report before plaintiff had exhausted the disciplinary appeals process.

On March 18, 2013, plaintiff submitted a grievance in which he alleged that prison officials were engaging in a "campaign of harassment" against him that included false conduct reports. However, he did not tie any particular act of harassment to a particular staff member. Defendant James Muenchow, a grievance examiner, rejected the complaint under Wis. Admin. Code § DOC 310.11(5)(c) on the ground that plaintiff did not provide enough facts to allow the examiner to give plaintiff any relief.

On March 26, 2013, defendant Pollard received plaintiff's appeal of the disciplinary decision. Pollard affirmed the decision.

On March 27, 2013, plaintiff submitted a grievance in which he stated that he was challenging the procedure used during the March 11 disciplinary hearing. However, plaintiff did not identify any procedures on the grievance form. Instead, he wrote that attached exhibits "H" and "I" "outlin[e] the procedural error claims [he] want[s] to raise." Defendant Moon rejected the complaint on the ground that plaintiff failed to identify any errors.

DISPUTED FACTS

In his verified complaint, plaintiff says that, on November 29, 2012, he overheard "several prison guards" saying that "the prison administration did not want to raise 'red flags' about 'why' Lt. Heidemann recently [was] demoted because if inmates found out 'why' Heidemann was demoted every inmate who [had] been written up by Heidemann would be complaining and trying to get all those C/R's thrown out." Dkt. #1 at ¶ 25.  Instead, "it was 'better' to allow Lt. Heidemann to demote herself."  Id. Later the same day, plaintiff "received confirmation" from an officer named Kirby that Heidemann had been demoted because "she had been fabricating [conduct reports] and lacked credibility on gang activity." Id. at ¶ 26.

In several declarations that he filed, plaintiff says that various prison officials admitted to him that they knew he was not lying and that he had been disciplined unfairly:

- During the disciplinary hearing, defendant Sabish allegedly stated, "Mr. Prude, I hate to find you guilty especially seeing that I'm aware of the validity of your complaint against Heidemann being demoted.  You've ruffled many feathers with your complaint, which is why you've been written up, however, my hands are tied." Plt.'s Dec., dkt. #19.

- On May 17, 2013, defendant Radtke allegedly told plaintiff, "The warden . . . did not like the fact [that] you were trying to let it be spot-lighted regarding why Heideman[n] was demoted.  I spoke with the warden and Lt. Larsen prior to the [conduct report] being written and it was discussed about you filing a complaint and that it was not your place to complain of internal issues."   In addition, Radtke allegedly stated, "Next time just use caution about what you complain of and you won't have to worry about being punished." Plt.'s Dec., dkt. #21.

- On July 12, 2013, plaintiff allegedly asked defendant Larsen why he issued the conduct report to plaintiff, even though Larsen knew that plaintiff was being truthful.  Larsen allegedly stated, "You should have

kept your mouth shut because we don't need you going around telling
prisoner[s] about how we choose to deal with our staff . . . Had you not
got[ten] involved you wouldn't have gotten written up.  So next time
a guard tells you confidential information let us know who told you so
we can deal with that staff member."  Plt.'s Dec., dkt. #17.

In addition, plaintiff submitted declarations from two another prisoners.  One of the
prisoners stated that, in March 2013, he asked defendant Larsen why he wrote plaintiff "that
bogus conduct report" and that Larsen responded, "Mr. Prude had it coming to him."
Baldwin Dec., dkt. #20.  The other prisoner stated that, on November 20, 2012, he
overheard Heidemann telling another officer that she was given a "compelled alternative"
to "demote herself" or "be demoted for falsifying tickets."  Harris Dec., dkt. #18.


## OPINION

In the screening order, I summarized my view of the law governing this case.  First,
prison officials may not retaliate against prisoners for filing a grievance or engaging in other
speech that is protected by the First Amendment.  Bridges v. Gilbert, 557 F.3d 541, 552
(7th Cir. 2009); Pearson v. Welborn, 471 F.3d 732, 738 (7th Cir. 2006).  Second, false
accusations against staff are not protected by the First Amendment, even if the false
statement is part of a prisoner grievance.  Hasan v. United States Dept. of Labor, 400 F.3d
1001, 1005 (7th Cir. 2005); Hale v. Scott, 371 F.3d 917 (7th Cir. 2004).  Third, plaintiff
must show that defendants acted with the *intent* of retaliating against him for engaging in
protected speech.  Ashcroft v. Iqbal, 556 U.S. 662, 676-77 (2009) ("Where the claim is
invidious discrimination in contravention of the First . . . Amendmen[t], our decisions make

9

clear that the plaintiff must plead and prove that the defendant acted with discriminatory purpose."). See also United States v. Norwood, 602 F.3d 830, 835 (7th Cir. 2010) ("[O]nly intentional conduct violates the Constitution."). In other words, plaintiff must show not only that he was telling the truth, but that defendants *knew* that he was telling the truth. Wilson v. Greetan, 571 F. Supp. 2d 948, 955 (W.D. Wis. 2007). Thus, if a defendant honestly believed that plaintiff was making false accusations about staff, then that defendant cannot be held liable for violating plaintiff's constitutional rights.

Neither side challenges this summary directly, but some of plaintiff's arguments seem to be inconsistent with the second point, which is that false statements are never protected speech in the prison context. He cites Wis. Admin. Code § DOC 303.271, which prohibits prisoners from making false statements "outside the complaint review system," and he argues that his letter to the warden accusing Heidemann of falsifying conduct reports was part of the prison's complaint review system. In addition, he cites Bradley v. Hall, 64 F.3d 1276, 1282 (9th Cir. 1995), in which the court held that "prison officials may not punish an inmate merely for using 'hostile, sexual, abusive or threatening' language in a written grievance." Although Bradley did not involve false speech, plaintiff relies on that case for the more general proposition speech made in the context of a prison grievance may be protected even if it would not be protected in other contexts. The rationale of Bradley (and presumably § DOC 303.271 as well) is that prisoners should have at least one means for airing grievances without having to worry that the language they use could get them into trouble; otherwise, a prisoner may be chilled from filing valid grievances. Bradley, 64 F.3d

at 1281 ("If a line between honest, unabashed airing of a grievance and 'hostile or abusive' language exists, it is a hazy one, leaving the aggrieved prisoner guessing whether he will be punished for what he has said in his formal prison complaint.  As Bradley himself said of the ODOC disrespect regulations, "It is very hard to know what the guards might find disrespectful so it is just safer not to complain.") (alterations omitted).

Plaintiff's reliance on § DOC 303.271 is a nonstarter.  Defendants argue persuasively that plaintiff's letter to the warden was "outside the complaint review system" because the letter was not submitted on a grievance form and prisoners are not supposed to submit grievances to the warden.  Wis. Admin. Code § DOC 310.09(1).  See also id. at § DOC 310.07(1)-(2).  However, even if I assume that plaintiff's letter was part of the complaint review system, the question in this case is not whether defendants were wrong to conclude that plaintiff violated § DOC 303.271, but whether defendants violated the First Amendment by disciplining plaintiff.  The scope of a state regulation cannot have any bearing on the scope of the First Amendment.  Ault v. Speicher, 634 F.3d 942, 947 (7th Cir. 2011) ("[E]ven if Plaintiff could show that Defendant violated Illinois law, failure to comply with state procedures does not demonstrate the violation of Plaintiff's clearly established constitutional . . . rights.").  Thus, § DOC 303.271 has little relevance to plaintiff's claim.

However, plaintiff's larger argument that some false statements should have First Amendment protection is not without merit.  As the Supreme Court reaffirmed recently, "[t]he Court has never endorsed the categorical rule . . . that false statements receive no First Amendment protection." United States v. Alvarez, 132 S. Ct. 2537, 2545 (2012).  "This

11

comports with the common understanding that some false statements are inevitable if there is to be an open and vigorous expression of views in public and private conversation, expression the First Amendment seeks to guarantee." Id. at 2544. To give free expression adequate breathing room, false statements may be protected if, for example, they are not made knowingly or recklessly. Id. at 2545.

In Hale, 371 F.3d 917, the court of appeals suggested that a similarly nuanced approach may apply in the prison context. The prisoner in that case had been disciplined for including a "rumor" in his grievance that a female officer was "screwing a lot of the Officer's on the midnight shift along with a few Sergants and Lt's." Id. at 918. The court upheld the discipline, stating that, "there is no indication that [the prisoner] had any basis for believing the rumor about [the officer] to be truthful, [so] he was guilty of 'actual malice' and . . . his libel was unprotected by the Constitution." Id. at 919. In addition, the court noted that the prisoner's allegation about the officer had nothing to do with his grievance, which was about meals, so it would be improper to give First Amendment protection to the allegation simply because it was part of a grievance. Id. at 918-19.

In Hasan, 400 F.3d 1001, the court seemed to take a more categorical approach. The prisoner in that case had been disciplined for filing a grievance in which he accused an officer of tampering with the typewriter. The court upheld the discipline without discussing Hale and even though the prisoner's accusation was related to the grievance. The court stated that "the defendants presented uncontradicted evidence that they punished him not because he tried to exercise free speech but because his accusation was a lie; and if as we must assume

this was their true motive, there was no retaliation." The court did not expressly consider whether the prisoner had made the allegation knowingly or recklessly and the court did not provide enough facts to allow another court reviewing the decision to make its own determination. The court used the word "lie" when referring to the prisoner's allegation, but it is not clear whether the court was finding that the prisoner knew his speech was false or simply that the prison officials *believed* that the prisoner was lying when they disciplined him.

Both <u>Hale</u> and <u>Hasan</u> leave some room for doubt. In <u>Hale</u>, the court did not hold that a knowing or reckless standard applies to false prisoner speech or that speech in a prison grievance is subject to a different standard than other prisoner speech. Instead, the court simply stated that, even if either of those things was true, the prisoner's retaliation claim would fail because his statement was reckless and unrelated to subject of his grievance. In <u>Hasan</u>, the court simply ignored the issues it discussed in <u>Hale</u>.

Although there may be some ambiguity in the cases, I read <u>Hasan</u> as rejecting a view that false speech by a prisoner is protected simply because it is the subject of a grievance. It is less clear whether <u>Hasan</u> leaves any First Amendment protection for false statements that a prisoner believed in good faith to be true. However, I need not resolve this issue to resolve the parties' summary judgment motions. Regardless of the appropriate standard in this case, I cannot resolve plaintiff's claims as to many of the defendants as a matter of law because there are genuinely disputed issues regarding whether plaintiff's speech was false, whether he knew his speech was false and whether many of the defendants honestly believed his speech was false.

Surprisingly, neither side provides documentary evidence of the reason or reasons Heidemann was demoted.  Defendants cite a declaration from Heidemann in which she says that she "voluntarily demoted [her]self from Lieutenant to Sergeant for personal reasons." Heidemann Dec. ¶ 3, dkt. #43.  Plaintiff cites a declaration from another prisoner who says that he heard Heidemann telling another officer that she was given a "compelled alternative" to "demote herself" or "be demoted for falsifying tickets."  Harris Dec., dkt. #18.  Thus, that issue is disputed.

It is also disputed whether several of the defendants honestly believed that plaintiff was lying about staff.  Plaintiff has submitted declarations in which he avers that defendants Sabish, Larsen and Radtke stated that they knew plaintiff was telling the truth, but that he was being punished for complaining about staff misconduct.  In addition, plaintiff says that defendant Ratdke relayed a conversation she had with defendant Pollard (the warden) in which Pollard admitted the same thing.  (Plaintiff does not say that he heard that statement from Pollard directly, which suggests that the statement could be hearsay.  However, under Fed. R. Evid. 801(d)(2)(D), statements offered against a party are not hearsay if they are made by agents acting within the scope of their employment.   Because that rule seems to apply in this case and defendants offer no argument to the contrary, I will consider the declaration.)

Defendants ask the court to disregard plaintiff's evidence on the ground that it is "factually baseless,"  e.g., Dfts.' Reply to Plt.'s Resp. to Dfts.' PFOF ¶ 36, dkt. #56,  but their only support for this is Heidemann's declaration.  Plaintiff has submitted contrary

14

declarations that purport to rely on personal knowledge and defendants cite no authority for the view that I may reject plaintiff's declarations under the circumstances of this case. "Thus, the dispute . . . comes down to a good old-fashioned swearing contest that can be resolved only by assessing the credibility of the two [witnesses]. Credibility determinations, however, lie exclusively within the fact-finder's domain and are not appropriate for a district court to make at the summary judgment stage." Townsend v. Fuchs, 522 F.3d 765, 774 (7th Cir. 2008).

I agree with defendants that it seems unlikely that multiple prison officials would admit to plaintiff that he was being unfairly treated, but I may not weigh the evidence on a motion for a summary judgment and determine which side's version is more persuasive. "Even if one side's story is more believable, the court must avoid the temptation to decide which party's version of the facts is more likely true." McCann v. Iroquois Memorial Hospital, 622 F.3d 745, 752 (7th Cir. 2010) (internal quotations and citations omitted). Plaintiff's allegations "are not so incredible or implausible . . . that a reasonable jury could not find in his favor," so I cannot decide this issue as a matter of law. Kodish v. Oakbrook Terrace Fire Protection Dist., 604 F.3d 490, 507 (7th Cir. 2010).

Further, defendants are not entitled to qualified immunity at the summary stage with respect to defendants Pollard, Sabish, Larsen and Radtke. If I accept as true plaintiff's version of the facts, then it is clearly established that defendants violated plaintiff's constitutional rights because, even under the strictest view of a prisoner's First Amendment rights, prison officials may not retaliate against a prisoner for making false accusations when

they know the accusations are true.  (Defendants do not argue that they would have had a legitimate reason for disciplining plaintiff even if they believed he was speaking truthfully, so I do not consider that question.)

This leaves plaintiff's claims against defendant's Meli, Moon and Muenchow.  Meli's only involvement in disciplining plaintiff was that he reviewed the conduct report that Larsen issued to plaintiff and determined that it should proceed to a disciplinary hearing. Moon and Muenchow had no involvement in disciplining plaintiff; he has sued them because they rejected grievances that he filed about the alleged misconduct of the other defendants.

I conclude that plaintiff has not adduced sufficient evidence to prevail on his claims against these three defendants.  With respect to defendant Meli, plaintiff cites no evidence that Meli was part of any conspiracy to retaliate against plaintiff or that Meli had any reason to question Larsen's determination in the conduct report that plaintiff had lied about staff. Thus, plaintiff cannot prove that Meli intended to punish plaintiff for protected speech rather than for false statements.  Iqbal, 556 U.S. at 676-77; Wilson, 571 F. Supp. 2d at 955. Even if I assume that the conduct report did not provide enough information to allow Meli to determine whether plaintiff had a good faith belief that Heidemann had falsified conduct reports, as discussed above, the law is not clearly established that a prisoner's good faith belief is enough to obtain protection under the First Amendment for a false statement. Although qualified immunity does not apply to requests for injunctive relief, the only injunctive relief plaintiff requests is to clear his disciplinary record, dkt. #10, which would

16

be a matter for the warden to take care of rather than Meli.

Plaintiff's claim against the complaint examiners is even weaker.  Defendant Moon rejected both of the grievances at issue for procedural reasons; the first one because plaintiff did not identify any good cause for its untimeliness, in violation of Wis. Admin. Code § DOC 310.09(6), and the second one because it raised issues related to a conduct report before plaintiff had exhausted the disciplinary appeals process, in violation of Wis. Admin. Code § DOC 310.08(3).  Defendant Muenchow likewise rejected a third grievance for plaintiff's failure to comply with a procedural rule:  plaintiff did not provide enough facts to determine whether he had a valid grievance, as required by  Wis. Admin. Code § DOC 310.11(5)(c).

Plaintiff may disagree with these decisions, but even if I assume that the decisions are incorrect, that does not mean that they violated plaintiff's First Amendment rights.  The Court of Appeals for the Seventh Circuit has held repeatedly that grievance examiners may not be held liable for enforcing procedural rules that lead to the rejection of a grievance, even if the grievance raises a meritorious issue.  George v. Smith, 507 F.3d 605, 609-10 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional] violation."); McGee v. Adams, 721 F.3d 474, 485 (7th Cir. 2013) (dismissing claim that grievance examiner violated Constitution by ruling against prisoner); Burks v. Raemisch, 555 F.3d 592, 594-95 (7th Cir. 2009) (dismissing claim that grievance examiner violated Constitution by rejecting grievance as untimely).  A rule to the contrary would be akin to imposing liability on a judge for dismissing a complaint that was

filed after the statute of limitations, violated Rule 8 or had some other procedural defect.

<u>Burks</u>, 555 F.3d at 594-95.  Accordingly, I am granting defendants' motion for summary judgment as it relates to defendants Meli, Moon and Muenchow.

ORDER

IT IS ORDERED that

1.  Plaintiff Terrance Prude's motion for summary judgment, dkt. #13, is DENIED.

2.  The motion for summary judgment filed by defendants William Pollard, Anthony Meli, Tonia Moon, James Muenchow, Jeremiah Larsen, Cynthia Radtke and Corey Sabish, dkt. #36, is DENIED as to defendants Pollard, Larsen, Radtke and Sabish and GRANTED as to defendants Meli, Moon and Muenchow.  The complaint is DISMISSED as to defendants Meli, Moon and Muenchow.

Entered this 2d day of July, 2014.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge